IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KWAME BOTWE-ASAMOAH,

    Plaintiff,                        13-cv-817
                                     **ELECTRONICALLY FILED**

    v.

UNIVERSITY OF PITTSBURGH,

    Defendant.

**MEMORANDUM OPINION RE: DEFENDANT'S MOTION TO DISMISS
(DOC. NO. 6)**

**I. Introduction**

The parties' dispute centers on Kwame Botwe-Asamoah's ("Plaintiff's") claim that University of Pittsburgh ("Defendant") denied him tenure and promotion because of his race, color, and national origin. Doc. No. 1, ¶ 1. The Court's jurisdiction is based upon a federal question. Presently before this Court is Defendant's Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint.

Plaintiff alleges and seeks redress for the following causes of action in his Complaint: (1) Defendant unlawfully discriminated against Plaintiff based on his race, color, and national origin in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 *et seq.*; (2) Defendant breached its contract with Plaintiff because it failed to follow its own policies and criteria for tenure and promotion; and (3) Defendant wrongfully terminated its contractual relationship with Plaintiff as a result of mentor's intentional interference with Plaintiff and Defendant's contractual relationship. Doc. No. 1, ¶ 1. After careful consideration of Defendant's Motion to Dismiss

(Doc. No. 6) and Brief in Support (Doc. No. 7), as well as Plaintiff's Brief in Opposition (Doc. No. 16), Defendant's Motion to Dismiss will be GRANTED.

**II. Material Facts**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, at this stage the Court accepts all of the factual allegations in the Complaint as true and all reasonable inferences are drawn in Plaintiff's favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Taking the Plaintiff's factual allegations as true solely for the purposes of this Memorandum Opinion, the facts of this case are as follows:

Plaintiff was a tenure track Assistant Professor of Africana Studies in the School of Arts and Sciences at the University of Pittsburgh.  Doc. No. 1, ¶ 21.  Effective September 1, 2003, to April 30, 2006, Plaintiff began a three-year probationary period as Assistant Professor of Africana Studies.  Id. at ¶ 103.  Later, Plaintiff was reappointed to the position of Assistant Professor of Africana Studies, effective September 1, 2006 to April 30, 2009.  Id. at ¶ 104. During Plaintiff's tenure at the University of Pittsburgh, he received favorable evaluation in all three areas of teaching, research, and service; he published several scholarly works; received several awards recognizing his excellence in scholarship; and he served on a variety of University committees.  Id. at ¶¶ 26, 108, 114, 115.

Between 2005 and 2007, Plaintiff had at least two faculty opportunities elsewhere, but Dr. Joseph Adjaye, who served as Plaintiff's mentor, encouraged Plaintiff to continue his employment with the University of Pittsburgh.  Id. at ¶ 25, 29.  Dr. Adjaye assured Plaintiff that his award-winning book would "definitely get him tenure at Pitt."  Id. at ¶ 29.  On January 29, 2008, Dr. Adjaye denied that he was Plaintiff's mentor in an email to Dr. Cecil Blake, who was

Chair of the Department of Africana Studies at the time. Id. at ¶¶ 38, 40. On September 23, 2009, Plaintiff submitted his complete dossier to Dr. Adjaye and to the Office of the Administrator of the Department of Africana Studies. Id. at ¶ 45.

On or about November 7, 2009, Plaintiff met with Dr. Adjaye to discuss a strategy about Plaintiff's tenure and promotion. Id. at ¶ 46. At this time, Dr. Adjaye told Plaintiff that he had been tasked with assessing Plaintiff's scholarship at the Departmental Faculty Committee's upcoming meeting. Id. at ¶ 46. Following his meeting with Plaintiff, Dr. Adjaye criticized Plaintiff's scholarship. Id. at ¶ 47. On or about November 8, 2009, Dr. Adjaye told Plaintiff, "tenure at Pitt is like a boy's club; if you are in it, you get tenured, and if not you don't get it." Id. at ¶ 49. During this conversation, Dr. Adjaye also stated that this was the reason that three black females did not get tenured at the University the previous year. Id. at ¶ 49.

On November 18, 2009, Plaintiff was invited to meet with three members of the Department Review Committee to hear their decision as to Plaintiff's application for tenure and promotion. Id. at ¶ 52. Department Chair of Africana Studies Dr. Brenda Berrian told Plaintiff, "even if we recommend you, the University would turn it down since the University had tenured only two black faculty members in the past ten years." Id. at ¶ 53. Dr. Berrian went on to say, the Departmental Faculty Committee abstained from voting on Plaintiff's dossier as a protest against Dr. Blake's harassment of Plaintiff throughout the five years Dr. Blake served as chair of the department. Id. at ¶ 54. Dr. Berrian informed Plaintiff that Dr. Blake committed procedural irregularities including: failing to conduct yearly peer-evaluations of Plaintiff's class; failing to address teaching evaluations in the yearly reports; failing to provide Plaintiff with a list of acceptable peer-review journals in which to publish articles; and instead of consulting Department faculty, Dr. Blake went to the Department of History to solicit names for external

reviewers of Plaintiff's research and publication. Id. at ¶ 55- 58. Dr. Berrian advised Plaintiff to ". . . get a lawyer to sue the University for judicial improprieties." Id. at ¶ 60.

Dean John Cooper, in a written letter dated March 30, 2010, denied Plaintiff tenure and promotion. Id. at ¶ 66. On April 30, 2010, Plaintiff informed Dean Cooper that he was going to appeal the denial of tenure and promotion, and on June 16, 2010, Plaintiff submitted his arguments and documents in support of his request for reconsideration of the denial of tenure and promotion. Id. at ¶¶ 67, 71. On October 28, 2010, Plaintiff received a letter from Dean Cooper stating that he would not reconsider the decision to deny Plaintiff tenure and promotion. Id. at ¶ 74. On November 10, 2010, Plaintiff appealed the decision not to reconsider the decision to deny Plaintiff tenure and promotion. Id. at ¶ 75.

Plaintiff requested the chance to present and argue his case for tenure and promotion before the Appeals Panel. Id. at ¶ 77. On or around March 7, 2011, Plaintiff received a letter from Provost Patricia Beeson stating that the Appeals Panel had denied his request to meet with them to discuss and argue his case for tenure and promotion and that Dean Cooper's decision should stand. Id. at ¶ 79. In April 2011, Dr. Blake informed Plaintiff that Dr. Berrian had made the statement "any African man would be hired over her dead body." Id. at ¶ 83. Dr. Blake also informed Plaintiff that Dean Cooper was aware of Dr. Berrian's discriminatory remarks against hiring African men as faculty members because he, Dr. Blake, wrote a letter to Dean Cooper about the remarks. Id. at ¶ 83.

On July 11, 2011, Plaintiff filed a discrimination claim with the Pennsylvania Human Relations Commission ("PHRC"). Id. at ¶ 14. On December 13, 2011, the PHRC denied Plaintiff's claim due to the untimeliness of the complaint. Id. at ¶ 15.

**III. Standard Of Review**

    **A. Rule 12(b)(6)**

In considering a Motion to Dismiss brought pursuant to Fed. R. Civ. Pr. 12(b)(6), Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly*, 550 U.S. 554 and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must take three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 662).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.*; *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, the Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Services, Inc.*, 346 Fed. App'x. 774, 776 (3d Cir. 2009).

In short, the Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him to relief. *Twombly*, 550 U.S. at 563 n.8.

## IV. Discussion

### A. Count I

#### 1. Plaintiff's Title VII Claim

Defendant argues that Plaintiff's Title VII Claim should be dismissed as untimely and for the failure to exhaust administrative remedies. Before filing a lawsuit, a plaintiff must exhaust his or her administrative remedies by filing a timely discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413-14 (3d Cir. 2010). The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before he/she can initiate a private action. *Id.* The ensuing suit is limited to claims that are within the scope of the initial administrative charge. *Id.* Here, Plaintiff failed to file a complaint with the EEOC at any point in time to assert a claim under Title VII. In the Complaint, Plaintiff does not even allege that he exhausted his

administrative remedies by filing a complaint with the EEOC.  Plaintiff's failure to file an EEOC claim bars this lawsuit and any recovery.

However, Plaintiff alleges that he filed a PHRC charge.  A plaintiff must file a charge of discrimination with the PHRC "within 180 days of the alleged act of discrimination." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997).  If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the Pennsylvania Human Rights Act ("PHRA"). *Id.*  The Pennsylvania Courts have strictly interpreted this requirement, and have repeatedly held that "persons with claims that are cognizable under the PHRA must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in the Act." *Id.*  In the present case, Plaintiff was denied tenure on March 30, 2010, but did not file his PHRC complaint until July 11, 2011, which was more than 180 days after his denial of tenure[1].  Consequently, Plaintiff's Title VII claim will be dismissed.

### 2. Plaintiff's Section 1981 Claim

Plaintiff asserts that his discrimination claim based on 42 U.S.C. §1981 ("Section 1981"). No private right of action lies against a state actor under Section 1981. *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731(1989) (§ 1981 does not itself provide a remedy against state actors).  The Supreme Court of the United States has held that "a state university without question is a state actor." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988).  Here, Plaintiff's Complaint is without any viable legal basis because there is no right of action against Defendant

---

[1] The filing limitations period commences at the time the tenure decision is made and communicated. *Delaware State v. Ricks*, 449 U.S. 250, 258 (1980).

because it is a state actor.  Therefore, because Plaintiff cannot state a claim of relief under § 1981 against the Defendant, Plaintiff's claim will be dismissed.

    **B.  Count II**

Plaintiff alleges that the University of Pittsburgh's Faculty Handbook ("Handbook"), and other unidentified policies, practices and statements formed the basis of a contract, and that the contract was breached when the University did not grant him tenure.  Under Pennsylvania law, in order to prove breach of contract, plaintiff must establish: 1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damages.  *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002).

Plaintiff pleads insufficient facts to establish a breach of contract claim because the facts presented do not show that a contract existed.  Creating a contract requires that an offer is intentional and deliberate.  *Morrosetti v. Louisiana Land and Exploration Co.*, 564 A.2d 151, 152 (Pa. 1991).  Plaintiff alleges that the Handbook and other policies formed the basis of a contract.  The Handbook that Plaintiff relies on as evidence expressly states "… the language used in this Handbook is not intended to create a contract between the University of Pittsburgh and its employees."  Because it used this express language, the Handbook failed to create a contract.  *Raines v. Haverford College*, 849 F.Supp. 1009, 1012 (E.D. Pa. 1994).

However, Plaintiff contends that there are different versions of the Handbook, and the version that he relied on, Faculty Handbook 2002 (Updated 2006), does not contain the express language that Defendant cites.  Assuming Plaintiff's assertion as true, even without the use of express language, a Handbook or other policies that may provide disciplinary procedures, *etc*. are not binding.  *Lord v. Erie Cnty.*, 476 F. App'x 962, 967 (3d Cir. 2012).  It is true that a handbook can be considered part of a contract, but for this to occur it must be distributed to employees as

inducement for employment as part of an offer. *Morrsetti*, 564 A.2d at 152. None of the documents identified in Plaintiff's Complaint support that the Handbook was part of an offer of employment. Based on the facts presented, it is not possible to infer that a contract was created. Accordingly, Plaintiff's breach of contract claim will be dismissed.

### C. Count III

Plaintiff claims that Defendant wrongfully terminated its contractual relationship with Plaintiff because of a mentor's intentional interference with Plaintiff and Defendant's contractual relationship. Under Pennsylvania law, the first element of a cause of action for intentional interference with a contractual relation is the existence of a contractual relation between the complainant and a third party. *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000).

Here, there was no contractual relationship between the Plaintiff and Defendant because the Handbook did not constitute a contract. Because Plaintiff had no existing contract with the Defendant, the first element to prove intentional interference with a contract is not satisfied. Furthermore, Plaintiff's assertion that University faculty members interfered with his application fails because a corporation cannot be liable for tortious interference with a contract to which it is a party.[2] Therefore, Plaintiff's claim for tortious interference with contract will be dismissed.

---

[2] It is well settled that corporations act only through their officers and agents, and cannot be liable for tortious interference with a contract to which it is a party. *Michelson v. Exxon Research and Engineering Co.*, 200 A.2d 416 (1964).

## V. Conclusion

Because Plaintiff's claims are untimely and based on a non-existent contract, Defendant's Motion to Dismiss will be **GRANTED**. Said claims will be dismissed with prejudice because any amendment would be futile due to the untimeliness and lack of contractual basis for all of Plaintiff's claims. An appropriate Order follows.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties